FRONTIER INSURANCE CO. (Agent V. Apodaca III d/b/a V. Apodaca III Bail Bonds), Appellant,

v.

The STATE of Texas, Appellee.

No. 08–01–00039–CV.

Court of Appeals of Texas, El Paso.

Nov. 1, 2001.

Gonzalo Garcia, El Paso, for appellant.

Jose R. Rodriguez, County Atty., Arne Carl Schonberger, Asst. County Atty., El Paso, for State.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Frontier Insurance Company[1] appeals from a final judgment forfeiting a $20,000 bail bond. Finding a "split bond" to be a valid and binding undertaking, we affirm.

### FACTUAL AND PROCEDURAL SUMMARY

According to the trial court's findings of fact, Carlos Dominguez was indicted for possession of more than fifty but less than 2,000 pounds of marihuana. After Dominguez's arrest, a magistrate set bail in the total amount of $40,000 but further set what the parties refer to as a "split bond"—a $20,000 personal recognizance bond, and a $20,000 surety bond. Dominguez posted a personal recognizance bond and the surety bond with Frontier acting as the surety. In an effort to insure Dominguez's future appearance, the trial court imposed several conditions in connection with the personal recognizance bond.[2] When Dominguez failed to appear for his trial, the court forfeited both bonds. The trial court later held a final hearing on the judgment nisi. After determining that no sufficient cause had been shown to explain Dominguez's failure to appear, the court forfeited the surety bond and rendered a final judgment against Frontier in the amount of $20,000 and against Dominguez in the total amount of $40,000.

1. According to the appellate record, an individual named V. Apodaca III, doing business as Apodaca Bail Bonds, is an agent for Frontier Insurance Company. Throughout the opinion, we will refer to Appellant as Frontier Insurance.

2. The personal recognizance required that Dominguez: commit no offenses; abide by a curfew from 10 p.m. to 6 a.m.; participate in programs as directed; seek and keep employment; report once a week; submit to urinalysis when requested; use no drugs or alcohol; not leave El Paso County without written consent; and pay a bond fee in the amount of $150. The record does not reflect which agency or entity is responsible for supervising the personal recognizance bond.

## VALIDITY OF A SPLIT BOND

In its sole issue presented on appeal, Frontier contends that the surety bond is not a valid and binding undertaking because it is a "split bond," or in other words, a bond that is part personal bond and part surety bond. According to Frontier, such a split bond is impermissible because it violates a requirement of the Code of Criminal Procedure that the defendant be allowed to make a cash bond in lieu of a surety bond. *See* Tex.Code Crim. Proc.Ann. art. 17.02 (Vernon 1977). We have previously rejected a challenge to the split bond predicated upon complaint that it does not comport with the requirements of Tex.Code Crim.Proc.Ann. art. 17.08 (Vernon Supp.2001). *See Allegheny Casualty Co., d/b/a Exit Bail Bonds v. State,* 52 S.W.3d 894, 900 (Tex.App.—El Paso 2001, no pet). The only other published decision on the issue is an opinion of the Texas Attorney General which concludes that a magistrate may not require a bailable criminal defendant to satisfy a split bond. *See* Op.Tex.Att'y Gen. No. JC–0215 (2000).

■ Analysis of the issue requires consideration of several provisions in the Code of Criminal Procedure, including the statutory definitions of relevant terms. "Bail" is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond. Tex.Code Crim.Proc.Ann. art. 17.01. A court has considerable discretion in determining the amount of bail required in any case although the decision must be guided by relevant constitutional and statutory provisions as well as other factors which have been described in the developing case law. *See Ex parte Green,* 940 S.W.2d 799, 801 (Tex.App.—El Paso 1997, no pet.); Tex.Code Crim.Proc.Ann. art. 17.15.

Article 17.02 defines a "bail bond" as a written undertaking entered into by the defendant and his sureties for the appearance of the principal therein before some court or magistrate to answer a criminal accusation. Tex.Code Crim.Proc.Ann. art. 17.02. That article further provides, however, that the defendant upon execution of the bail bond may deposit cash in an amount equal to the bond in lieu of having sureties sign same. *Id.* A court also has discretion to release the defendant on his personal bond without sureties or other security. Tex.Code Crim.Proc.Ann. art. 17.03. The trial court's discretion includes an ability to require the defendant to comply with certain conditions. *See* Tex.Code Crim.Proc.Ann. art. 17.42, § 4 (requiring court to assess a personal bond fee); Tex. Code Crim.Proc.Ann. art. 17.43 (permitting magistrate to require defendant to submit to home curfew and electronic monitoring under supervision of an agency designated by the magistrate); *Smith v. State,* 829 S.W.2d 885, 887 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd)(recognizing inherent power to impose other conditions that rationally relate to the purpose of securing the defendant's appearance). Consistent with these provisions, the split bond arrangement permits the trial court to impose other conditions designed, at least in theory, to secure the defendant's presence for further proceedings and trial.

The Attorney General decided that a split bond was invalid because a personal bond is incompatible with a bail bond since a defendant who is released on a personal bond is released without sureties or other security. *See* Op.Tex.Att'y Gen. No. JC– 0215 (2000). Moreover, a split bond does not permit a defendant to make a cash deposit in the amount of the bond in lieu of having sureties sign the bail bond. *Id.* Noting several other issues which are po-

tentially troublesome, the Attorney General concluded that a split bond is precluded by Article 17.01.[3] *Id.* We remain unpersuaded by this analysis. *Allegheny,* 52 S.W.3d at 900.

While we agree that a personal bond and a bail bond are distinct undertakings, that distinction does not, standing alone, render them mutually exclusive and incompatible. If a split bond is to be found invalid, then it must be due to a violation of some statutory provision. With respect to the argument that a split bond violates Section 17.02, the State correctly notes that nothing precluded Dominguez from depositing $20,000 in lieu of having Frontier sign the bail bond as a surety. Here, the split bond is actually to Dominguez's advantage because he would have been permitted to obtain his release by executing the personal recognizance bond and depositing only $20,000 in cash rather than depositing $40,000. Further, there is absolutely no evidence that Dominguez sought to exercise his right to de-posit cash under Section 17.02 nor that he or Frontier objected prior to execution of the bond.[4] Finally, we are not presented on appeal with any of the issues which the Attorney General identified as potentially problematic. While there may be a case in which one of these issues renders a split bond invalid, we will not resort to speculation to find that the split bond at issue in this case is invalid. Having found that the split bond is not prohibited by the Code of Criminal Procedure, we overrule the sole issue for review. *Allegheny,* 52 S.W.3d at 900. The judgment of the trial court is affirmed.

3. The opinion asks: "[W]ould there, in effect, be two bonds requiring two different bond forfeitures? Would the surety and the individual be considered co-sureties, raising issues of proportionate recovery and contribution? What if the surety wants off the bond-should a warrant go out for the defendant's arrest if the surety only secures a limited amount of the bond? Further, sureties are responsible for all necessary and reasonable expenses incurred in re-arresting the principal in the event he fails to appear. Should a surety be responsible for the full amount of the expenses if the surety is only responsible for a portion of the bond?"

4. As an alternative argument, the State maintains that Frontier waived its complaint by failing to object prior to posting the surety bond and by accepting the benefits of the bond to obtain Dominguez's release. We agree. The Court of Criminal Appeals has repeatedly held that a defendant or surety must object to any defect in a bond prior to its execution, particularly if the complaint relates to a defect in the bond arising from a failure to comply with a statutory requirement that is for the benefit of the defendant or surety. *See Scott v. State,* 617 S.W.2d 691, 692 (Tex.Crim. App.1981)(by failing to object prior to execution of bond, defendant and surety waived their complaint that bond was invalid because it did not state the time when the principal was required to appear); *Balboa v. State,* 612 S.W.2d 553, 555 (Tex.Crim.App.1981)(where surety failed to object at time of execution of bond, the surety waived complaint that bond was not valid due to its failure to specify the court or magistrate before whom the principal is to appear). Even if we agreed with Frontier that a split bond is invalid because it violates Article 17.02, we would find the argument waived because Frontier did not make any objection prior to executing the surety bond but instead accepted its benefits without complaint.